UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.:  8:03-CR-77-T-30-TBM

SAMI AMIN AL-ARIAN,
SAMEEH TAHA HAMMOUDEH,
GHASSAN ZAYED BALLUT,
HATEM NAJI FARIZ

**RESPONSE OF THE UNITED STATES TO DEFENDANT FARIZ'S MOTION
TO QUASH SECTION(b) OF PARAGRAPH 26 AND EXTORTION ALLEGATIONS
IN COUNTS 12-16 AND 18-21**

The United States of America by Paul I. Perez, United States Attorney, Middle District of Florida, submits the following response to defendant Fariz's Motion to Quash Section(b) of Paragraph 26 and Extortion Allegations in Counts 12-16 and 18-21 (Doc. 709):

Defendant Fariz alleges in his motion that the allegations in the Superseding Indictment are legally insufficient to support paragraph 26(b) of Count One, which charges as an object of the RICO conspiracy that the defendants conspired to engage in multiple acts of extortion in violation of Section 836.05 of the Florida Statutes, and the "extortion" prong of the Travel Act counts.  He correctly acknowledges that paragraph 29 and its fourteen sub-paragraphs contain the government's legal and factual theory, but insists that the Superseding Indictment still fails to pass legal muster.  For the reasons set forth below, his motion should be denied.

### A. Legal Standard

As this Court indicated in its Order, dated March 12, 2004, (Doc. 479),

> [i]n deciding a motion to dismiss, this Court must deny the motion if the factual allegations in the Indictment taken in the light most favorable to the government are sufficient to charge an offense as a matter of law. See United States v. deVegter, 198 F.3d 1324, 1327 (11th Cir. 1999) (quoting United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987)).

United States v. Al-Arian, et al., 308 F. Supp. 2d 1322, 1332-33 (MDFL 2004).

The legal sufficiency of an indictment is governed by Rule 7(c) of the Federal Rules of Criminal Procedure. This Court discussed Rule 7(c) and the relevant case law in its previous Order, and thus it need not be repeated here. See Al-Arian, 308 F. Supp. 2d at 1348.[1]

### B. The Court's Previous Decision

This Court quashed paragraph 26(b) of Count One of the original Indictment, relying on the Supreme Court's ruling in Scheidler v. National Organization for Women, Inc., 537 U.S. 393 (2003), decided subsequently to the filing of the original Indictment. In Scheidler, the Supreme Court held that for a state extortion statute to constitute racketeering activity as defined in 18 U.S.C. § 1961(1), that statute must encompass activity generically recognized as extortionate. The Supreme Court previously had defined generic extortion as "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." United States v. Nardello, 393 U.S. 286, 295 (1969). Following Nardello, the Supreme Court held in Scheidler that a

---

[1] To the extent that it is applicable, the government incorporates by reference the "Response of the United States to Defendant Fariz's Motion to Quash Paragraph 26(b) of Count One of the Indictment." Doc 344.

state extortion offense for purposes of RICO must have as a requirement that the extortionist must obtain or seek to obtain property. Scheidler, 537 U.S. at 410. To "obtain" means to "gain possession of." Id. at 403 N.8. In Scheidler, the Supreme Court held that the facts showed only that the defendants had attempted to interfere with plaintiffs' property rights.

In analyzing the original Indictment, this Court first determined that Section 836.05 of the Florida Statutes charges the crime of extortion and that it is a generic extortion statute. The Court next determined, however, that the original Indictment did not contain sufficient factual allegations to meet all the legal requirements for "generic extortion" imposed by the Supreme Court in Scheidler.

This Court noted that paragraph 29 of the original Indictment was the only place where there was an attempt to allege extortion. Paragraph 29 alleged:

> The enterprise members would and did commit acts of violence, intimidation, and threats against Israel, its inhabitants and others, including murders and suicide bombings, and solicit and cause others to do so, with the intent to drive Israel out of the territory from the Jordan River to the Mediterranean Sea and to end any influence of the United States in the Middle East.

In analyzing paragraph 29, this Court concluded that it lacked an allegation that the defendants were trying to obtain property or a thing of value from victims. In this Court's view, the most it alleged was that the defendants were trying to extinguish Israeli sovereignty over property between the Jordan River and the Mediterranean Sea. This Court then compared the concept of sovereignty to the alleged property rights discussed in Scheidler, namely, the right to receive and perform medical services, and concluded that sovereignty was more amorphous than those rights. This Court then

held that paragraph 29 failed to allege that anyone lost or could have lost anything of value.

Subsequently, defendant Fariz moved to quash the extortion allegations in the Travel Act counts, at least those counts applicable to defendant Fariz.  Doc. 549.  The government filed a response in opposition.[2]  On August 4, 2004, this Court granted defendant Fariz's motion and quashed the extortion allegations in the Travel Act counts.  Doc. 594.

### C.  The Superseding Indictment

On September 21, 2004, the government filed its Superseding Indictment re-alleging in paragraph 26(b) of Count One that the defendants conspired to commit multiple acts involving extortion in violation of Florida Statutes 836.05 (extortion), 777.011 (aiding and abetting) and 777.04 (attempts and conspiracies).  The specific factual allegations in support of the extortion charges are set forth in a revised paragraph 29.  Revised paragraph 29 now reads:

> 29.    The enterprise members would and did, by verbal and written communications, maliciously threaten injury to persons, namely, the inhabitants of the State of Israel and individuals and entities owning land in the State of Israel, with the intent thereby to obtain from such persons, certain property, namely, the physical land located within the State of Israel; such verbal and written communications would and did include, but were not limited to, the following statements described in substance below:

---

[2]To the extent that it is applicable, the government incorporates by reference the United States' Opposition to Defendant Fariz's Motion to Quash Extortion Allegations in Counts 35-38 and 40-44, Motion to Dismiss Counts One, 35-38 and 40-44 or Alternatively for Review of Grand Jury Transcripts as It Related to Extortion.  Doc. 558.

(a) The enemy forcibly took our land and the Jihad will continue until the complete liberation of our country, from the river to the sea;

(b) Every Jew on the land of Palestine will be a target to our bullets and daggers, and without mercy;

(c) It is a call for a holy Jihad, to liberate and to cleanse the entire Palestinian lands from the filth of the Zionist criminals;

(d) Either the Zionists leave Palestine, or we will make it a graveyard for all of them.

(e) Our goal is the complete elimination of the Zionist existence from our holy land;

(f) We will chase the Zionists to any place we can get them to liberate our land; Palestine is ours and not theirs; there is nothing in front of the Zionists but to leave our holy land;

(g) The existence of any Zionist on Palestinian land, all of Palestine, from the river to the sea, will be the target of our weapons;

(h) The attack at Beit Lid Junction was to avenge our people at the town of Khodairah, and on all Palestinian land that Rabin's gangs confiscated from its occupants who lived on it for thousands of years;

(i) We had our right to resist the Zionist enemy in every way and at any time on any spot of our Palestinian land;

(j) We will remain loyal to the martyrs until every inch of our holy Palestine is returned to the Palestinians;

(k) Blood will flow until the complete liberation of our country Palestine;

(l) The Zionist entity will not enjoy any security or stability as long as the occupation of our land Palestine remains;

(m) It is our duty to resist that occupation of Palestine, occupied since 1948, and raise their occupational costs, so they will compare between occupation and leaving; and,

(n) Jihad is the only way to get back the whole Palestinian holy land, which is a property of the whole Islamic nation, and nobody has the right to surrender or yield a span of land.

Revised paragraph 29 tracks the language of the Florida extortion statute. Section 836.05 of the Florida Statutes provides in pertinent part:

> Whoever, either verbally or by a written or printed communication . . . maliciously threatens an injury to the person, property or reputation of another, . . . with intent thereby to extort money or any pecuniary advantage whatsoever, . . . shall be guilty of a felony . . . .

This statute contains the basic elements of a classic extortion: (1) a communication threatening injury to another; (2) done so maliciously; (3) with the intent to obtain; (4) money or some pecuniary advantage. Revised paragraph 29 alleges by example fourteen verbal or written communications threatening injury and death by violence, directed against the inhabitants of the State of Israel and individuals and entities owning and possessing land in Israel, with the intent to extort from, or obtain, the physical land located within Israel. Paragraph 4 of Count One defines Israel for purposes of revised paragraph 29, and that definition excludes the Gaza Strip and the West Bank. Thus, in summary, the extortion scheme as described alleges that the PIJ enterprise made threats of violence against the Israelis to try to extort from them the physical land within Israel itself. The fourteen examples of threats describe in stark and chilling clarity the nature of the threats and the property sought to be obtained. The threats go far beyond a mere demand that the Israeli government relinquish sovereignty over the State of Israel; the threats demand that the owners and possessors of land within Israel give the land to the Palestinians and leave Palestine or die.

6

While acknowledging the existence of the allegations in paragraph 29, defendant Fariz nevertheless continues to argue in shotgun style that those allegations are legally insufficient.  He basically makes the same argument over and over, but with different words each time.  First, he argues that the PIJ enterprise cannot take legal title to the land comprising the State of Israel.  Doc. 709 at 3.  Later, he reformulates this argument by claiming that the Indictment fails to allege that the current owners of the property at issue lose legal title in any way or that the defendants sought to obtain such legal title.  Doc. 709 at 5.  Recasting the argument again, Fariz argues that the Indictment fails to allege that any of the defendants were involved in extortionate activity for pecuniary gain or that the extortion scheme involves an economic component.  Doc. 709 at 5.  Finally, he argues that the alleged ownership interests are inherently vague, and concludes from that assertion that the Indictment still only alleges a "deprivation of sovereignty" theory.  Doc. 709 at 4.  None of these arguments, considered individually or collectively, has any merit on the issue as to whether the Indictment's allegations are legally sufficient.

As this Court has indicated previously, an indictment is sufficient if it sets forth each essential element of an offense, and that an indictment normally is sufficient if it tracks the words of the statute.  Al-Arian, 308 F. Supp. 2d at 1348.  Thus, Florida case law is instructive in understanding the elements of the Florida extortion statute.  The Florida extortion statute prohibits only those utterances or communications which constitute malicious threats to do injury to another person, reputation or property; the threats must be made with the intent to extort money or the intent to compel another to act or refrain from acting against his will.  Carricarte v. State of Florida, 384 So. 2d

1261, 1263 (FL), cert. denied, 449 U.S. 874 (1980). A threat is "malicious" if it is made intentionally and without any lawful justification. Alonso v. State of Florida, 447 So. 2d 1029, 1030 (FL 4th DCA 1984). The extortion offense does not require that the extortionist intend, or even have the ability, to carry out his threat. Id. Even a threat to do an act which a person has a lawful right to do becomes unlawful when a defendant does it for his own pecuniary advantage. Berger v. Berger, 466 So. 2d 1149, 1151 (FL 4th DCA 1985); Carricarte, 384 So. 2d at 1263 ("we cannot sanction the use of threats to take legal action where those threats are made maliciously and with the intent to acquire pecuniary gain"). The threat to injure need not be made against the holder or possessor of the property. State of Florida v. McInnes, 153 So. 2d 854, 856 (FL 1st DCA 1963); see also Dudley v. State of Florida. 634 So. 2d 1093, 1094 (FL 2d DCA 1994) ((i)n establishing extortion, it is sufficient that the threat of injury was against a person other than the person actually threatened).

The Florida courts have also interpreted the elements of the extortion statute during the course of rebuffing First Amendment constitutional challenges to it. In Matthews v. Florida, 363 So. 2d 1066 (FL 1978), cert. denied, 442 U.S. 911 (1979), the defendant was convicted of threatening to assassinate a local Sheriff if the Sheriff did not dismiss a deputy who had been involved in a fatal shooting. On appeal, the defendant claimed his threat was political speech protected by the First Amendment under Watts v. United States, 394 U.S. 705 (1969). In rejecting defendant's argument, the Florida Supreme Court held that the record established that the defendant's conduct constituted a real and substantial criminal "threat" as opposed to "political hyperbole." Matthews, 363 So. 2d at 1069. In Carricarte, the Florida Supreme Court rejected the

defendant's "vagueness" and "overbreadth" challenges. The defendant in Carricarte was an attorney who threatened to take legal action if the victim did not hire him. The Florida Supreme Court held that the state's interest in protecting its citizens from such strong-arm tactics was compelling and defendant's communications were undeserving of First Amendment protection.

The Florida Supreme Court in Carricarte also noted that Tennessee has an extortion statute virtually identical to Section 836.05. Carricarte, 384 So. 2d at 1263. In its decision, the Florida Supreme Court cited with approval and relied upon Moore v. Newell, 401 F.Supp. 1018 (E.D. TN 1975), aff'd 548 F.2d 671 (6th Cir.), cert. denied, 431 U.S. 971 (1977). Moore offers several additional important observations about state extortion. Moore was a habeas corpus proceeding involving a defendant who had been convicted under the Tennessee extortion statute. In Moore, the defendant picketed a food store and called for a boycott of the store because the store's president would not make a contribution to the defendant's charitable organization. The defendant was arrested after being warned that his activities were unlawful and after being given a chance to cease his activities. The defendant was convicted of making malicious threats in violation of the Tennessee extortion statute. The defendant contended that he could not be convicted of extortion because he did not intend to make personal use of the payments. The court held that the extortion statute did not require such proof:

> The statute concerns the method by which a payment is sought and not the use to which the money is ultimately to be applied. The fact that the petitioner apparently did not intend to make personal use of the money is of no significance here. Cf. United States v. Provenzano, 334 F.2d 678, 685 (3d Cir.), cert. denied, 379 U.S. 947 (1964).

9

Moore, 401 F.Supp. at 1020-21.  On appeal, the Sixth Circuit said in affirming the state conviction:

> No matter how worthy a charitable cause may be, however, we are not willing to hold that a disappointed solicitor has a constitutional right to threaten to close down the business of a merchant and use picketing as an instrument to carry the threat into effect, for the purpose of coercing the merchant to make a contribution to charity.

Moore, 548 F.2d at 673.  Thus, even activity which might otherwise enjoy First Amendment protection can become an actionable threat if it is done maliciously to obtain property.  Thus, under the Moore analysis, two conclusions can be reached about the Florida extortion statute:  (1) the statute is concerned with the methods by which property is sought to be obtained; and (2) the use to which the property is to be put, and by whom, does not matter.  Stating the second proposition another way, a defendant need not obtain the property for his personal use or benefit.

That a defendant extortionist need not obtain the property for his personal use of benefit is an important principle generally applicable to extortion law.  In United States v. Green, 350 U.S. 415, 420 (1956), the United States Supreme Court was called upon to interpret the federal Hobbs Act extortion statute (18 U.S.C. § 1951).  The defendant, a labor union official, extorted a company into paying wages to workers who did no work. The defendant contended that the indictment was deficient because it did not allege that he received a benefit.  In ruling the Indictment was legally sufficient, the Supreme Court held:

> extortion as defined in the statute in no way depends upon having a direct benefit conferred on the person who obtains the property.

Green, 350 U.S. at 420. In United States v. Provenzano, 334 F.2d 678, 685-86 (3d Cir.), cert. denied, 379 U.S. 947 (1964), the defendant was also convicted of Hobbs Act extortion. He claimed on appeal that there was no proof presented at trial that he received any benefit, direct or indirect, from the payments that were made by the victim to another person. The Third Circuit held that there was no such requirement. "The gravamen of the offense is loss to the victims." Id. at 686. Finally, in People v. Fichtner, 281 App. Div. 159 (1952), aff'd 114 N.E. 2d 212 (1953), in interpreting the New York extortion law, the New York court held that the defendant need not receive a personal benefit. In Fichtner, the defendants-employees extorted a customer to pay money to their employer by threatening prosecution for shoplifting. The customer had committed the crime of shoplifting, but the court held that fact did not preclude the jury from finding the defendants guilty of extortion.

Once one is armed with the knowledge of the elements of the extortion statute and a proper interpretation of those elements, it becomes easy to see the fallacies in defendant Fariz's arguments. Fariz has either read nonexistent requirements into the Florida extortion statute or is merely attacking the anticipated proof at trial. Green, Provenzano and Moore make it clear that there is no requirement that the extortionist (the PIJ enterprise in this case) take legal title to any property. In fact, there is no element in the Florida extortion statute which requires "legal title" of the land to pass from the victim to the extortionist as if this extortion scheme were nothing more than a gigantic real estate closing.[3] Scheidler itself held that to "obtain" only means to "gain

---

[3] The government is unaware of any authority for the proposition that an extortionist can ever acquire legal title to property which is obtained as a consequence of an extortion scheme.

11

possession of."  Under Green, to obtain property does not imply or require that the extortionist receive a direct benefit at all.  Using that same rationale, there is no requirement that the defendants themselves receive a pecuniary gain or that the indictment make such an allegation.  The Indictment alleges that the PIJ enterprise was maliciously attempting to obtain land possessed or owned by Israelis through threats of violence.  The allegations track the language of the Florida extortion statute and are legally sufficient under F. R. Crim. P. 7(c)(1).

As for the remaining arguments, the allegations in the Indictment refute them. The factual allegations in the superseding indictment surely set forth an extortion scheme which fundamentally contemplates a transfer or loss of ownership and/or possession of property.  There is nothing vague about the ownership or possessory interests at stake.  There is nothing vague about the goal of the PIJ enterprise.  The PIJ enterprise threatened the inhabitants of Israel with death unless they returned the land between the Jordan River and the Mediterranean Sea to the Palestinians and leave. The Indictment clearly alleges a brutal, lethal extortion scheme in shocking detail.

The Travel Act (18 U.S.C. § 1952) Counts (5-21) allege the Florida extortion statute as part of the underlying "unlawful activity" along with money laundering.  Part A of each of the Travel Act counts incorporates by reference Part D of Count One (which includes paragraph 29).  Therefore, if paragraph 29 is sufficient to support paragraph 26(b) of Count One, it is also sufficient to support the extortion prong of "unlawful activity" in the Travel Act counts.  In any event, the money laundering prong is not affected by this motion.

Wherefore, for the foregoing reasons, defendant Fariz's motion to quash the extortion allegations should be denied.

          Respectfully submitted,

          PAUL I. PEREZ
          United States Attorney

By:   */s Terry A. Zitek*
      Terry A. Zitek
      Executive Assistant U. S. Attorney
      Florida Bar No. 0336531
      400 North Tampa Street, Suite 3200
      Tampa, Florida  33602
      Telephone:   (813) 274-6000
      Facsimile:   (813) 274-6108
      E-mail:      terry.zitek@usdoj.gov

**U.S. v. Sami Amin Al-Arian, et al.**               Case No. 8:03-CR-77-T-30-TBM

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2004, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

- Kevin T. Beck
- Stephen N. Bernstein
- M. Allison Guagliardo
- Bruce G. Howie
- William B. Moffitt
- Linda G. Moreno
- Wadie E. Said

/s Terry A. Zitek
Terry A. Zitek
Executive Assistant U. S. Attorney
Florida Bar No. 0336531
400 North Tampa Street, Suite 3200
Tampa, Florida  33602
Telephone:   (813) 274-6000
Facsimile:   (813) 274-6108
E-mail:      terry.zitek@usdoj.gov