**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

     **v.**                                      **Case No. 8:03-CR-77-T-30TBM**

**HATEM NAJI FARIZ**
_____/

## MOTION TO STRIKE TESTIMONY OF SPECIAL AGENT KERRY MYERS AND FOR A MISTRIAL

Defendant, Hatem Naji Fariz, by and through undersigned counsel, and pursuant to the Sixth Amendment to the U.S. Constitution and Federal Rules of Evidence 701-704 respectfully requests that this Honorable Court (1) strike the testimony of Special Agent Kerry Myers, and (2) declare a mistrial due to the prejudice to the defense of the previous admission of such testimony. Alternatively, the Court should strike the testimony and instruct the jury that they should disregard Agent Myers' testimony and reach their own conclusions about the evidence in this case. As grounds in support, Mr. Fariz states:

### I.      Introduction

The defense, and the jury, were informed that the government proffered Agent Myers as an expert. When the defense opportunity arose for cross-examination, however, the defense first learned that the Court did not consider Agent Myers to be an expert, but only a summary witness. If such is the case, the Court must strike all opinions and "expert" testimony that Agent Myers provided, including but not limited to his testimony as to the Palestinian Islamic Jihad ("PIJ") Shura Council and to codes. *See* Part II, *infra*. Because the

jury has been exposed to approximately one month of such testimony, and it is not possible for the jury at this late stage to disregard this testimony, Mr. Fariz requests a mistrial.

In the course of his testimony, Agent Myers also testified explicitly and by appearance as the case agent in this prosecution. *See* Part III, *infra*. Nonetheless, the defense has thus far been largely foreclosed from cross-examining Agent Myers on the quality of his investigation, despite his role in this case. If Agent Myers is only testifying as a summary witness, then all testimony concerning his investigation must be stricken. Alternatively, Mr. Fariz must be given the opportunity to cross-examine Agent Myers on the quality of his investigation.

Finally, if Agent Myers testified only as a summary witness, then the Court must strike any of Agent Myers' conclusions, inferences, or interpretations of any of the evidence. *See* Part IV, *infra*. Because these conclusions and inferences ran throughout Agent Myers' testimony and cannot be divorced from his "summary," the Court should strike Myers' testimony in its entirety and instruct the jury that they are to disregard Agent Myers' testimony and reach their own conclusions as to the evidence in this case.

## II.   Expert Testimony of Agent Myers

### A.   The Government Proffered Agent Myers as an Expert, and the Court Instructed the Jury that the Government Sought to Use Agent Myers as an Expert

Prior to trial, the government disclosed to the defense that they intended to offer Special Agent Kerry Myers as an expert. In pretrial motions, the defendants challenged Agent Myers' qualifications and testimony as an expert. (Docs. 1152, 1157, 1163). In

response, the government claimed that Agent Myers would be an expert on the PIJ Shura Council and coded-language in the communications. (Doc. 1220). The Court deferred ruling until trial. (Doc. 1241).

The government called Agent Myers to the witness stand on July 26, 2005, and proffered him as an expert. (7/26/05 at 16).[1] In particular, the government elicited testimony concerning Agent Myers' experience. Agent Myers testified that he had practiced as a lawyer, including in private practice for some number of years and as an Assistant United States Attorney for one year. *Id.* at 4. Agent Myers stated that he joined the Federal Bureau of Investigation in 1990 and attended the FBI Academy. *Id.* Agent Myers testified that he has worked on cases involving white-collar crimes, violent crimes, general crimes, and drug-related crimes. *Id.* at 5. In his work on such cases, Agent Myers stated that he had been exposed to coded and veiled communications. *Id.* at 5-6.

The only case that Agent Myers testified to that involved terrorism charges was a domestic terrorism case on which he worked from 1996 to 2000, including full-time work beginning in 1998. *Id.* at 6-7. Upon questioning from the prosecutor concerning the type of charges ultimately brought in that case, Agent Myers stated that it was "[c]onspiracy to provide material support to a terrorist organization." *Id.* at 6-7. Agent Myers testified that the participants used coded or veiled communications, where they had actually adopted a formalized code, or cipher, which the undercover agent obtained "because he was high in the

---

[1]        The trial transcripts are referred to by date of trial and page numbers of the transcripts.

organization." *Id.* at 7-8.  When asked about the types of things that the organization used veiled communications for, Agent Myers stated for identities and references to explosives. *Id.* at 7-9.

Agent Myers further testified that he had received training in cryptanalysis in 1990-91 at the FBI Academy.  *Id.* at 9.  Agent Myers then generally stated that he had received training regarding terrorism matters and counter-terrorism.  *Id.*   During testimony, Agent Myers stated that he has taught courses on Palestinian terrorism and the PIJ to law enforcement and intelligence officers.  *Id.* at 11.  Agent Myers specifically offered that he is "regularly consulted within the Federal Bureau of Investigation concerning Islamic Jihad matters from all across the country, and also from legal attache FBI offices in foreign countries."  *Id.*

With respect to his experience in this case, Agent Myers testified that he had: (1) reviewed the evidence seized pursuant to search warrant; (2) reviewed the FISA communications; (3) met with experts regarding the PIJ; (4) interviewed PIJ members and leaders who were imprisoned; and (5) met with witnesses and victims of the acts in this case in Israel and the Middle East.  *Id.* at 10-13.  With respect to his interviews of PIJ members, Agent Myers based his conclusion that the individuals he had interviewed were PIJ members on prosecutions through the Israeli court system and admissions that they were involved in the PIJ.  *Id.*. at 12.  Agent Myers testified that he discussed with these PIJ members their efforts to avoid detection, how they received money, and their method of operations.  *Id.* at 12-13.

4

Throughout this line of questioning, the government clearly elicited testimony from Agent Myers concerning his investigation of the instant case and his purported expertise to testify in this trial. Indeed, prior to "summarizing" the communications, the government sought to elicit Agent Myers' overall opinion of the conversations and facsimiles in evidence, including that (1) they are difficult to understand, (2) they express security concerns, often triggered by events in the case such as the search warrants or media reports, (3) the communications include veiled or coded references, (4) the principals on these conversations have multiple names, and (5) people speak or write in the third person. *Id.* at 13-17.

In response to defense objections to this line of questioning eliciting Agent Myers' opinions concerning the FISA intercepts generally, the Court instructed the jury:

> We're entering into difficult territory here, and I'm going to start by first telling you something in general. The government is trying to establish this witness as an expert in certain fields, which is why they've been asking these questions so far and gotten these answers about his background and that sort of thing.
>
> In any case, let's talk about a civil case involving a car accident. When you have an accident reconstruction expert or medical doctor or metallurgist that talks about the force required to bend steel or something, any time you have an expert, they would establish their background, they would talk about the facts that they reviewed, and then would give their opinion.
>
> You're entitled to give whatever weight you think these opinions deserve. You can either accept it or reject it, just like any other witness.
>
> Now, this case has an additional layer of difficulty in that this witness is more than just an independent expert. He's an FBI agent who's been in charge of investigating this case. So, you need to give the weight you think his testimony deserves, but you also need to filter it through the understanding that he's an FBI agent, he's an employee of the government. So, that - - when he gives his opinions, you have to recognize that they are his opinions, and you can understand how that could cause heartburn for any defendant in any case if they have an FBI agent up there testifying as an expert.

5

(7/26/05 at 15-16).

After the government indicated that it had completed its questioning of Agent Myers to offer him as an expert on July 26, counsel for Mr. Fariz challenged Myers' qualifications as an expert. *See, e.g.*, *id.* at 14-15.[2]  The Court did not rule on that objection.  Agent Myers then proceeded to testify to his opinions concerning the PIJ Shura Council, coded communications, and other matters.  For example, Agent Myers testified repeatedly as to his conclusions on the PIJ Shura Council, including its members, and about "code" words contained within the communications, such as:

(1) that Agent Myers understood the "old one" and Abu Ammar to refer to Yasser Arafat (8/3/05 at 53; 8/17/05 at 47-48);

(2) that "the guys" refers to PIJ operatives (7/28/05 at 26-27), and implying that Mr. Fariz uses this term "guys" in one of his communications (8/17/05 at 66-67);

(3) "cake" means bomb (8/18/05 at 9);

(4) with respect to "dates and sesame seeds," Agent Myers learned "through [his] investigation in this case," that shrapnel of various types was placed into bomb devices (8/18/05 at 9); and

(5) "chickpeas" is Hamas (8/18/05 at 14).

---

[2]    The transcript prepared for July 26, 2005 is only a partial transcript and does not contain each argument.  Mr. Fariz has requested that a more complete transcript be prepared which includes the sidebar conferences and other objections.

### B.    Request for Relief With Respect to the "Expert" Testimony

Mr. Fariz maintains that Agent Myers is not qualified as an expert to testify as to the use of codes or concerning the PIJ Shura Council, or to any matter relating to this case.[3] The problem, however, is that the defense, and equally significantly the jury, were never informed that the Court and the government did not consider Agent Myers to be testifying as an expert until the defense began cross-examining him, after nearly one month of testimony on direct. Instead, the jury was instructed, and the defense believed, that the Court considered Agent Myers to be testifying in the capacity as an expert, particularly with respect to certain testimony, and that the defense objections to his qualifications had been overruled.

While the defense had been making objections during Agent Myers' testimony, counsel believed the objections were based on rules prohibiting experts, or even non-experts, from testifying to certain matters.  For example, the defense objected to testimony that (1) expressed an opinion on what factual result to reach, such as whether an individual was a member of the "Tampa cell";[4] (2) lacked a foundation because it was based on hearsay and/or

---

[3]    Notably, while the government had represented prior to trial that it would call Agent Daniel Olsen as an expert to testify about the methodology, and its reliability, of code-breaking *before* Agent Myers testified about codes (Doc. 1220 at 11), the government never called Agent Olsen.

[4]    *See, e.g., United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004) ("Proferred expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing argument."); *United States v. Welch*, slip op. 17-18 (11th Cir. Aug. 29, 2003) (unpublished op.); *United States v. Casas*, 356 F.3d 104, 117-21 (1st Cir. 2004) (holding that agent could not testify that the defendants were a member of the organization, since that was the issue to be determined by the jury, and vacating conviction for defendant for whom the error was not harmless).

violated the Confrontation Clause;[5] and (3) expressed an opinion on the mental state of one or more of the defendants.[6] The defense did not object to a significant portion of Agent Myers' testimony on the mistaken belief that the Court found, and so instructed the jury, that Agent Myers was testifying as an expert.

While the Court and the government may have concluded that Agent Myers was not an "expert," he certainly was given that authority before the jury. Agent Myers was able to inform the jury repeatedly of his conclusions, interpretations, and opinions concerning the communications and other evidence in this case. The risk that the jury believed he had information beyond the text of the communications, particularly in his role as a case agent and investigator, was great. The Second Circuit's opinion in *United States v. Grinage*, 390 F.3d 746, 750-51 (2d Cir. 2004) vacating the defendant's conviction is illustrative of the perils of Agent Myers' testimony in this case, even if the Court believes Agent Myers is not an expert.[7]

---

[5]    *See, e.g,, United States v. Bounsignore*, slip op. 6-7 (11th Cir. May 13, 2005) (unpublished op.) (holding that court erred in admitting agent's expert testimony concerning valuation of drugs based on information received from an unidentified individual at the DEA in Washington D.C.) (citing *Crawford v. Washington*, 541 U.S. 36 (2004)).

[6]    Federal Rules of Evidence 704(b) and 403; *see, e.g., United States v. Alvarez*, 837 F.2d 1024, 1029-30 (11th Cir. 1988).

[7]    In *Grinage*, the government offered the testimony of the case agent who interpreted the communications. The government elicited the agent's training, background, and experience in drug cases and that he was "familiar with the manner in which drug dealers speak, a manner that 'is very cautious and often coded.'" *Id.* at 747. The agent then testified about the intercepted calls in the case, in which he had not participated, based on his entire investigation in that case. *Id.* at 747, 748, 750. When the agent testified about the calls, "[a]fter playing the tape, the prosecutor went

Mr. Fariz therefore contends that with the Court's conclusion that Agent Myers is not an expert, the Court must (1) strike any testimony of Agent Myers that goes beyond the mere summarization of the facts already in evidence, and (2) because of the prejudice to the defense of the month-long testimony of Agent Myers, declare a mistrial. Alternatively, the Court should strike Agent Myers' testimony and specifically instruct the jury that they should disregard his testimony and reach their own conclusions about the evidence.

## III.    Agent Myers' Testimony as Case Agent

Throughout Agent Myers' testimony, including but not limited to the government's proffer of Agent Myers as an expert, the agent clearly relied on his investigation in the instant prosecution to inform his testimony. For example, Agent Myers relied not only on the text

---

through the conversation line by line, asking the agent his understanding of each sentence." *Id.* at 748. In effect, the agent testified as to the meaning of the call. *Id.* at 748-49.

The defendant argued that agent improperly interpreted the meaning of the telephone conversations, provided the jury with expert testimony based on hearsay information he had obtained during the course of his investigation, and usurped the function of the jury. *Id.* at 749. In response, the government contended that it had not offered the case agent as an expert, and argued "that it was nearly impossible for the Government to play all the calls or the jury to listen to them all during deliberations. 'Accordingly, it was helpful for the jury to have the benefit of the testimony of an individual who reviewed every call' and could assist the jury by placing the Osman call in context and highlighting its similarities to other calls in furtherance of the conspiracy." *Id.* at 750.

The Second Circuit vacated the conviction, holding that the "agent's testimony as to his interpretations of the calls went beyond permissible lay opinion testimony under Rule 701(b) because, rather than being helpful to the jury, it usurped the jury's function." *Id.* at 751. The court further found that the "agent was presented to the jury with an aura of expertise and authority which increased the risk that the jury would be swayed by his testimony, rather than relying on it own interpretation of the calls." *Id.* The court further stated that, "[w]hether labeled as an expert or not, the risk that [the agent] was testifying based upon information not before the jury, including hearsay, or at the least, that the jury would think he had knowledge beyond what was before them, is clear." *Id.* at 750-71 (citation omitted).

of the communications and other evidence, but related to the jury his work on the case (such as interviewing experts and PIJ members) and his conclusions from his work.   As illustrations of such testimony, Agent Myers testified:

(1) to his conclusion on numerous occasions that a certain facsimile number was from the PIJ Headquarters in Damascus, Syria;

(2) to his conclusion on a number of occasions that another facsimile was at the Abrar office, or PIJ propaganda office;

(3) to information he had concerning information on other organizations, including that (a) Hizballah is similar to Hamas; it is Lebanese as opposed to Palestinian (8/2/05 at 78-79); and (b) that the Popular Front is a secular organization (8/18/05 at 8-9).

(4) on numerous occasions to his opinion or conclusion that the sender or speaker expressed a "security concern" within a communication;

(5) to information that Agent Myers had concerning immigration matters, including that (a) "as an investigator in this case," Agent Myers knew that Sameeh Hammoudeh was not allowed to work at IAF (8/4/05 at 19); and (b) Agent Myers had reviewed the transcript of the Al-Najjar hearings and testified that it was a detention hearing (8/17/05 at 25);

(6) to information concerning the Middle East, including that (a) the Iranians are Persians, not Arabs and speak Farsi (8/3/05 at 50); (b) Al-Manar is a publication out of Lebanon, including TV and a magazine or newsletter (8/18/05 at 15); and (c) the '48 refers to Israeli Arabs (8/23/05 at 18);

10

(7) Agent Myers had interviewed Thabet Mardawi, the PIJ prisoner, who formerly was the cell commander in Jenin. This testimony was elicited after publishing a telephone conversation of Mr. Fariz and Mr. Ballut that referred to the destroyed town of Jenin, in an attempt to imply that Mr. Fariz's conversation related in some way to PIJ activity in the area (8/22/05 at 32; *see also* 8/23/05 at 12).

(8) his own interpretations concerning the meaning of the communications (*e.g.*, Agent Myers interpreted that Mr. Fariz and Salah El-Din Abu Hassanein discussed "they do not want any telephone numbers" on the list of recipients, when the conversation questions whether the poor have telephone numbers) (8/22/05 at 15; T-1163);

(9) his conclusion that Naim Nasser Bulbol is involved with or is a member of Elehssan (8/17/05 at 18-19; 8/18/05 at 3); and

(10) that Agent Myers had traveled to the locations of some of the alleged attacks and described the area for the jury (*see, e.g.*, 8/17/05 at 52-53).

The government's presentation of Agent Myers to the jury was not of a mere summary witness. Instead, Agent Myers throughout his testimony related to the jury the work he had done as the case agent in this prosecution. The government oftentimes used his testimony to raise implications, many of which were unfounded and shifted the burden to the defense. In response to these testimony and unfair implications, the defense must have the ability to cross-examine Agent Myers concerning his credibility as a witness and the case agent and about the quality of his investigations. *See, e.g., United States v. Ross*, 33 F.3d 1507, 1517 (11th Cir. 1994) ("The defendant must be permitted sufficient cross-examination

11

to allow a jury to adequately assess the witness' credibility; otherwise, any limitation on cross-examination was error.") (citations omitted); *cf. United States v. Williams*, 837 F.2d 1009,  1015-16 (11th Cir. 1988) (finding that the court had not improperly restricted the cross-examination, where the defendant was able to expose the inadequacies of the case agent's investigation).

Alternatively, if the Court has concluded that Agent Myers only testified as a summary witness, and not as the case agent, then Mr. Fariz requests that this Court (1) strike the testimony of Agent Myers and (2) declare a mistrial or instruct the jury to disregard his testimony and to reach their own conclusions about the evidence.

## IV.    Agent Myers' Testimony as a Summary Witness

In addition, the government has heightened the confusion, and prejudice, to the defense by ostensibly having Agent Myers testify simultaneously as an expert witness, summary witness, and case agent.  By proceeding in this manner, the government gained the benefit of the appearance of expert testimony as to each question, even though the government mixed the basis of his testimony question-by-question.   The jury was not informed that Agent Myers was testifying only as a summary witness, thereby misleading the jury and unfairly prejudicing the defense.  If the defense counsel were misled and confused, then there is a significant likelihood that the jury was as well.

The only proper summary that Agent Myers could give was that of summarizing the evidence; he should not have been able to express conclusions, opinions, inferences, or argument of what the evidence demonstrates (or does not).  *See, e.g., United States v. Cano*,

289 F.3d 1354 (11th Cir. 2002) (indicating that detective's deciphering of drug hieroglyphics was neither "based on 'scientific, technical or otherwise specialized knowledge'" constituting expert testimony under Rule 702 or "based on the perception of the witness" constituting lay opinion testimony under Rule 701; finding that the detective's testimony in which he drew inferences from the facts already in evidence and "merely delivered a jury argument from the witness stand" was erroneous).  Because it is not possible now to divorce Agent Myers' interpretations, inferences, and opinions from his mere summary for the jury, the Court should declare a mistrial or strike Myers' testimony in its entirety and instruct the jury to reach its own conclusions about the evidence in this case.

**V.     Conclusion**

Accordingly, Defendant, Hatem Naji Fariz, respectfully requests this Honorable Court (1) strike the testimony of Special Agent Kerry Myers, and (2) declare a mistrial due to the prejudice to the defense of the previous admission of such testimony.  Alternatively, the Court should strike Agent Myers' testimony and instruct the jury to disregard his testimony and to reach their own conclusions about the evidence in this case.

Respectfully submitted,

R. FLETCHER PEACOCK
FEDERAL PUBLIC DEFENDER

   /s/   M. Allison Guagliardo
M. Allison Guagliardo
Florida Bar No. 0800031
Assistant Federal Public Defender
400 North Tampa Street, Suite 2700
Tampa, Florida  33602
Telephone:     813-228-2715
Facsimile:     813-228-2562
Attorney for Defendant Fariz

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this <u>29th</u> day of August, 2005, a true and correct copy of the foregoing has been furnished by CM/ECF and hand delivery, to Walter Furr, Assistant United States Attorney; Terry Zitek, Assistant United States Attorney; Cherie L. Krigsman, Trial Attorney, U.S. Department of Justice; William Moffitt and Linda Moreno, counsel for Sami Amin Al-Arian; Bruce Howie, counsel for Ghassan Ballut; and to Stephen N. Bernstein, counsel for Sameeh Hammoudeh.

　　/s/　M. Allison Guagliardo
M. Allison Guagliardo
Assistant Federal Public Defender

15